UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| JERRY GREGORY, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 4:10-cv-23 |
| v. | ) *Mattice/Carter* |
| | ) |
| GOODMAN MANUFACTURING | ) |
| COMPANY, L.P., | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

I. Introduction

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c)(1), requires a plan administrator to provide plan documents within 30 days upon a participant's or beneficiary's request. Failure to do so can result in a $110 per day fine for the administrator's failure to provide the requested information. Goodman Manufacturing Company, L.P. (Goodman) could not find the plan documents which were originally in the possession of its predecessor company, but Goodman failed to inform the plaintiff of this fact for nearly two and a half years, and, during this time, also failed to provide the plaintiff with the requested enrollment forms and a copy of the pension plan it did rely on to calculate the amount of his pension benefits. Accordingly, it is RECOMMENDED that defendant's motion for summary judgment [Doc. 19] as to plaintiff's claim for the $110 a day penalty brought under 29 U.S.C. § 1132(c)(1) be DENIED. Because the plaintiff no longer contests the amount of his pension benefits, it is RECOMMENDED that defendant's motion for summary judgment [Doc. 19] as to plaintiff's claim brought under ERISA, 29 U.S.C. § 1132(a), be GRANTED.

1

## II. Standard of Review

The standard of review for summary judgment is well established. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Where the record, viewed as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a summary judgment motion, all inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Id*. A judge's role is not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once a summary judgment motion is properly made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *accord Matsushita,* 475 U.S. at 587. If the opposing party fails to respond in this manner, summary judgment should be entered against that party if appropriate. Fed. R. Civ. P. 56(e)(2). The opposing party must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find for the non-movant. *Anderson*, 477 U.S. at 252.

## III. Relevant Facts

Gregory became employed by Amana Refrigeration, Inc.'s Fayetteville, Tennessee plant on October 4, 1973. Amana Refrigeration, Inc. was a division of Raytheon Corporation. He was an hourly bargaining unit employee. As such, he was a participant in the Amana Refrigeration,

2

Inc. Fayetteville Bargaining Unit Pension Plan ("the Plan"), which was a defined benefit retirement plan for hourly Fayetteville employees covered by the collective bargaining agreement with the International Association of Machinists and Aerospace Workers. Gregory continued his participation in the Plan until he was promoted to a salaried management position on September 27, 1983. At that time, Gregory was no longer in the union or covered by the collective bargaining agreement so, under the terms of the Plan, his participation in the Plan ended.

In 1997, Goodman acquired Amana Refrigeration, Inc.'s Fayetteville, Tennessee plant from Raytheon Corporation. As part of the acquisition, Goodman assumed administrative responsibility over the Plan. Also, at that time, Gregory became an employee of Goodman. On July 28, 2003, Goodman terminated Gregory's employment.

On November 2, 2007, Kristi Pittman, Goodman's Corporate Benefits Manager, wrote to Gregory stating Goodman's "records show you are eligible for [an] annual pension benefit of $720.00." (Doc. 19-2 Page ID # 298). She noted that while Gregory contended he was entitled to a benefit amount of $300 per month, "I've researched your benefit and there is nothing in your file to support this amount." On November 7, 2007, Gregory wrote to Pittman stating that under the retirement plan at issue, he was entitled to "$20.50 a month for each years [sic] of credit service. I'm entitled to pension pay for the 11 years of service." (Doc. 19-2, Page ID #299). Gregory requested that Goodman, "[p]lease send all necessary paperwork that is required to get my benefits started." *Id.* On October 8, 2008, after Gregory received no response to this request for "paperwork required to get my benefits started," Gregory's attorney, Mark Stewart, wrote to Kristi Pittman stating that Mr. Gregory had placed over 200 calls to her office and he had received no satisfactory response to his request for payment of his pension benefits. (Doc. 19-2,

Page ID # 300). Stewart further noted that in his conversation with Pittman, she had indicated to him that Goodman's attorney was looking at the details of the pension plan to determine the appropriate benefit payable to Gregory. Stewart gave Pittman 14 days to let him know Gregory's pension benefit or Gregory would institute legal action. *Id.*

Receiving no response to his October 8, 2008 letter, Stewart again wrote to Kristi Pittman on October 20, 2008 requesting a response to his October 8, 2008 letter. (Doc. 19-2, Page ID #301).

On February 5, 2009, Gregory's new attorney, Peter T. Skeie, wrote to Kristi Pittman, requesting copies of Plan documents and "all material information retained in a digital or other format responsive to 29 U.S.C. § 1024(b)(4)." (Doc. 19-2, page ID #302). Skeie attached a release and authorization from Gregory to his February 5, 2009 request (Doc. 19-2, page ID #302).

Having received no response from Pittman, Skeie wrote to Kristi Pittman again on March 24, 2009 referencing his prior letter and asking for the same documents. (Doc. 19-2, Page ID #303). When he still did not receive a response from Pittman, Skeie wrote to Ben Campbell, Goodman's Executive Vice President and General Counsel, on April 22, 2009 asking for assistance in obtaining the requested documents. Skeie attached a copy of his February 5, 2009 and March 24, 2009 letters to Pittman. (Doc. 19-2, Page ID #304). Receiving no response from Ben Campbell, Skeie wrote to David Swift, Goodman's President and Chief Executive Officer, on June 3, 2009 explaining that three letters for requested information had gone unanswered and asking for the Plan documents and all material information responsive to 29 U.S.C. § 1024(b)(4). (Doc. 19-2, Page ID #305). Skeie attached copies of his February 5, 2009 and March 24, 2009

written requests to Pittman, and a copy of his April 22, 2009 written request to Goodman's Executive Vice President and General Counsel, to his June 3, 2009 written request to Goodman's Chief Executive Officer (Doc. 19-2, Page ID #305). On June 12, 2009, Kristi Pittman finally responded to Gregory's "recent inquiries" by stating that Gregory may be eligible for a lump sum payment "based on the provisions of the plan." (Doc. 19-1, Page ID # 306). She also stated she would let Gregory know more when she had reviewed the matter. There were, however, no documents enclosed in the letter. *Id.*

On June 18, 2009, Skeie again wrote to Pittman on Gregory's behalf to reiterate Gregory's request for copies of Plan documents and the forms necessary for Gregory to elect his benefits. (Doc. 19-1, Page ID #307).

On April 14, 2010, after Gregory had repeatedly and unsuccessfully asked for the Plan documents upon which his pension benefits are based, he filed suit against Goodman seeking (a) payment of his vested benefits under the Plan pursuant to 29 U.S.C. 1132(a)(1)(C), and (b) statutory damages or penalties pursuant to 29 U.S.C. § 1132(c)(1)(A) and (B) for failure to provide the requested Plan documents.

On June 10, 2010, Pittman wrote Gregory and enclosed the forms necessary for Gregory to elect benefits pursuant to the 1989 Plan (Doc. 19-1, Page ID #265 – 297).[1] On July 19, 2010 Gregory executed the forms and documents required to elect benefits as calculated pursuant to the terms of the 1989 Plan (Doc. 19-1, Page ID #293 – 297). Gregory is now receiving retirement benefits pursuant to the terms of the 1989 Plan (Doc. 19, Page ID # 242).

It has been plaintiff's contention from the first time he asked for the Plan documents that

---

[1] It does not appear, however, that she enclosed a copy of the 1989 Plan.

his benefits should be calculated according to the terms of the 1983 Plan, the plan in effect when he was last part of the bargaining unit covered by the Plan. According to Kristi Pittman, the 1983 Plan was never provided to Gregory because it could not be found, despite all reasonable efforts on her part to locate the 1983 Plan. However, nothing in the record indicates Goodman ever told Gregory it could not find the 1983 Plan until sometime after he filed this lawsuit in April 2010. Further, while Pittman told Gregory on November 2, 2007 what she thought would be his annual pension benefit amount based on "the information we have on file regarding your pension," (Doc. 19-2, Page ID # 298), she did not provide him with a copy of the information she relied upon to reach this calculation, despite the many requests enumerated above, until this lawsuit was filed.

## IV. Analysis

*A. Plaintiff's Claim for Benefits under 29 U.S.C. § 1132(a)(1)(B)*

When plaintiff originally filed this lawsuit, he brought a claim under 29 U.S.C. § 1132(a)(1)(B) disputing the amount of benefits to which Goodman asserted he was entitled. Because Goodman could not find the 1983 Plan, it had used the 1989 Plan to calculate plaintiff's benefits. According to the plaintiff, he was entitled to a greater benefit amount under the 1983 Plan than the 1989 Plan. During the discovery phase of this litigation, Gregory sent several subpoenas to different organizations in an attempt to find a copy of the 1983 Plan. This effort was unsuccessful, and Gregory now "concedes that Goodman's calculation of his retirement benefit is based on the best available evidence," and "this concession effectively resolves his claim for benefits under 1132(a)(1)(B)." (Doc. 30, Page ID # 405). Accordingly, it is RECOMMENDED defendant's motion for summary judgment on plaintiff's claim for benefits

6

brought under 29 U.S.C. § 1132(a)(1)(B) be GRANTED.

*B. Plaintiff's Claim Under 29 U.S.C. § 1132(c)(1).*

ERISA § 502(c)(1)(B), 29 U.S.C. §1132(c)(1)(B), provides that:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

As required by the Debt Collection Improvement Act of 1996, the $100 a day limit has been increased to $110 for violations after July 29, 1997. *See* 62 Fed. Reg. 40696.

In terms of what documents the Plan Administrator must provide upon request, ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) states:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

As Section 1132(c)(1)(B) states, the Court has discretion in deciding whether to give a penalty up to $110 per day for failure to provide the requested information. *Bartling v. Fruehauf Corporation*, 29 F.3d 1062, 1068 (6th Cir. 1994). While many courts have refused to impose any penalty at all absent a showing of bad faith or prejudice to the plaintiff, a showing of bad faith or prejudice is not *required* to impose the penalty; rather they are factors for the court to consider when exercising its discretion. *See Bartling*, 29 F.3d at 1068-69; *Knickerbocker v. Ovako-Ajax, Inc.*, 1999 WL 551409 *4 (6th Cir. July 20, 1999) (unpublished) ("Although § 1132(c)(1)(B) does not require prejudice to impose penalties, a district court may consider prejudice in exercising its

7

discretion"); *Hamilton v. Publicis Groupe Short Term Disability Plan*, 2006 WL 2771742, *14 n. 11 (E.D. Mich. Sept. 25, 2006) (unpublished) ("Even if detrimental reliance and prejudice are not necessarily prerequisites to imposing the penalty; detrimental reliance and prejudice remain factors in deciding the amount (if any) of civil penalties to assess under 29 U.S.C. § 1132(c).")

"The purpose of the statute is to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so." *Bartling*, 29 F.3d at 1068; *see also Fadalla v. Life Automotive Products, Inc.*, 2009 WL 325369 *2 (6th Cir. Oct. 13, 2009) (unpublished) (The purpose of ERISA's penalty provision is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information") (quoting *Garst v. Wal-Mart Stores, Inc.*, 30 Fed. Appx. 585, 591 (6th Cir. Mar. 12, 2002) (unpublished)). Further, a plan administrator owes a fiduciary duty to a plan participant or beneficiary "to provide *complete* and accurate information." *McGrath v. Lockheed Martin Corporation*, 48 Fed.Appx. 543, 557 (6th Cir. Oct. 9, 2002) (unpublished). "ERISA fiduciary duty provisions incorporate the common law of trusts, and the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *McGrath*, 48 Fed.Appx. at 555 (quoting *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999)). In *McGrath*, the Sixth Circuit affirmed the district court's decision to award penalties for an administrator's failure to timely provide documents for the plan under which plaintiff was covered even though the plaintiff had asked for documents from the wrong plan – a plan under which plaintiff was *not* covered. *Id.* The Sixth Circuit found imposition of a penalty was not inappropriate where "[the administrator] did not inform the plaintiff that he was

asking for the incorrect documents, nor did she send plaintiff a copy of another pension plan."

On November 7, 2007, Gregory wrote Pittman asking her to "[p]lease send all necessary paperwork that is required to get my benefits started." Such paperwork would be paperwork under which his pension plan is operated and is required to be produced when requested. 29 U.S.C. § 1132(c)(1)(B) and 29 U.S.C. § 1024(b)(4). Pittman was reminded of this request in writing on October 8, 2007 and October 20, 2007. Goodman never responded. On February 5, 2008, plaintiff through his attorney specifically asked for "copies of Plan documents and all material information retained in a digital or other format responsive to 29 U.S.C. § 1024(b)(4)." Thereafter, on March 24, 2009, April 2, 2009, and June 3, 2009, plaintiff through his counsel again contacted Goodman in writing to request Plan documents. Goodman finally responded on June 12, 2009 when Pittman wrote a letter stating that plaintiff may be entitled to a lump sum payout for his pension benefits. However, the request for Plan documents was once again completely ignored. Plaintiff through counsel again reminded Goodman by letter on June 18, 2009 that he wanted the Plan documents. Finally, after receiving no documents from Goodman, plaintiff filed this lawsuit on April 14, 2010. Subsequently, on June 10, 2010, Goodman sent the plaintiff enrollment forms for his pension benefits.

Defendant's primary defense is that it could not provide what it did not have. The 1983 Plan had originally been in the care of Amana Refrigeration, Inc. which Goodman acquired in 1997. Plaintiff has presented no evidence to dispute Pittman's assertion that she undertook a careful and reasonable search for the 1983 Plan but, despite her best efforts, she could not find it, and, for purposes of this motion, I accept this assertion as true. It is also true that one cannot give what one does not have. It is not reasonable, however, that Goodman did not inform the

plaintiff, despite numerous requests over a two and a half year period, that it could not find the 1983 Plan. Nor was it reasonable for Goodman to refuse to provide enrollment forms to the plaintiff or provide a copy of the documents upon which Goodman had based its calculations of plaintiff's benefit amount. Goodman's failure to inform the plaintiff that it could not find the 1983 Plan and its refusal to provide enrollment documents and Plan documents of any kind to the plaintiff for two and a half years prejudiced plaintiff by delaying his receipt of benefits, undoubtedly caused plaintiff distress, and smacks of bad faith. Considering the facts and all reasonable inferences in the light most favorable to the plaintiff, I conclude Goodman is not entitled to summary judgment on plaintiff's claim brought under 29 U.S.C. § 1132(c)(1)(B).

*C. The Statute of Limitations Applicable to Claims Brought under Section 1132(c)(1)(B).*

Defendant argues that "even if a penalty were warranted (and it is not), Gregory could not recover more than one year's worth of daily penalties because a one-year statute of limitation applies to claims for penalties under 29 U.S.C. § 1132(c) in Tennessee." (Defendant's Reply, Doc. 23, Page ID #370-71 (parenthesis original). ERISA itself does not provide a limitations period for claims brought under Section 1132(c)(1). Depending upon how a court has characterized the nature of a claim brought under ERISA, the court applies the most closely analogous statute of limitations under state law. *Del Costello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983); *see also Santino v. Provident Life and Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2002). Some courts have applied the limitations period for statutory penalties while others have applied the limitations period for breach of fiduciary duties for claims brought under 29 U.S.C. § 1132(c)(1). *See e.g., Hatteburg v. Red Adair Co. Inc. Employees' Profit Sharing Plan*, 79 Fed. Appx. 709 (5th Cir. 2003) (applying Texas' two year statute of limitations for

breach of fiduciary actions for plan administrator's failure to provide beneficiary with requested information); *Kumar v. Higgins,* 91 F. Supp. 2d 1119, 1142 (N.D. Ohio 2000) (applying Ohio's statute of limitations for actions for penalties in a claim brought against plan administrator's failure to provide plan documents.) Neither the Sixth Circuit nor the Supreme Court has addressed this issue. In any event, in Tennessee the limitations period for both statutory penalties and breach of fiduciary duties is one year. Tenn. Code Ann. § 28-3-104(a)(4) (statutory penalties); Tenn. Code Ann. § 48-249-407 (breach of fiduciary duty). Furthermore, plaintiff does not dispute that Tennessee's one year statute of limitations period is applicable in the instant case. Plaintiff does dispute, however, that the one year limitations period bars his recovery of any penalties accrued before April 14, 2009 – one year before plaintiff filed this action on April 14, 2010.

Plaintiff argues that Goodman's failure to provide enrollment forms and Plan documents from November 7, 2007 until June 10, 2010 constitute a continuing violation, and, under the continuing violations doctrine, the limitations period does not begin to accrue until the last day of the continuing violation. Under this argument, the one year limitations period did not begin to accrue until June 10, 2010, when Goodman finally provided plaintiff with the pension Plan enrollment forms.[2] The Sixth Circuit and district courts within this circuit, however, have refused to apply the continuing violations doctrine to ERISA claims. *See Medical Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 349 (6th Cir. 2008) (refusing to apply continuing violations doctrine to claim brought by insurer against insured under 29 U.S.C. § 1132(a) to

---

[2] It's still not clear to the undersigned when exactly Goodman provided the plaintiff with a copy of the 1989 Plan upon which the amount of his benefits are based.

11

recover benefits paid to insured); *Edwards v. U.S. Dept. of Energy*, 371 F. Supp.2d 859, 869 (W.D. Ky. 2005) (refusing to apply the continuing violation doctrine to claim for benefits brought under Section 1132(a)), *aff'd* 200 Fed. Appx. 382 (6th Cir. 2006); *Shaid v. Chrysler, LLC*, 2008 WL 2397635 *3 (E.D. Mich. June 11, 2008) (refusing to apply the continuing violations doctrine to toll the limitations period in an ERISA claim brought for pension benefits.) Accordingly, I conclude the continuing violations doctrine does not apply to the current claim, and plaintiff's recovery, if any, will be limited by a one year statute of limitation.

## V. Conclusion

For the reasons stated herein, it is RECOMMENDED[3] defendant's motion for summary judgment as to plaintiff's claim for pension benefits brought under 29 U.S.C. § 1132(a) be GRANTED, and plaintiff's claim for monetary damages brought under 29 U.S.C. § 1132(c)(1) be DENIED.

SO ORDERED.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).