UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| JERRY GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:10-cv-23 |
| v. | ) | *Mattie/Carter* |
| | ) | |
| GOODMAN MANUFACTURING | ) | |
| COMPANY, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I. Introduction

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c)(1), requires a plan administrator to provide plan documents and enrollment forms within 30 days upon a participant's or beneficiary's request. Failure to do so can result in a $110 per day fine. Goodman Manufacturing Company, L.P. (Goodman) could not find the pension plan documents which were originally in the possession of its predecessor company, but Goodman failed to inform the plaintiff of this fact for nearly two and a half years, and, during this time, also failed to provide the plaintiff with the requested enrollment forms and a copy of the pension plan it did rely on to calculate the amount of his pension benefits. Accordingly, it is RECOMMENDED plaintiff's motion for summary judgment [Doc. 35] as to plaintiff's claim for failure to timely provide plan documents be GRANTED. It is further RECOMMENDED that plaintiff's claim for failure to timely provide enrollment forms be denied because enrollment forms are not included in the types of documents which must be provided pursuant to Section 1132(c)(1).

1

## II. Standard of Review

The standard of review for summary judgment is well established. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Where the record viewed as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a summary judgment motion, all inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Id.* A judge's role is not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once a summary judgment motion is properly made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *accord Matsushita,* 475 U.S. at 587. If the opposing party fails to respond in this manner, summary judgment should be entered against that party if appropriate. Fed. R. Civ. P. 56(e)(2). The opposing party must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find for the non-movant. *Anderson*, 477 U.S. at 252.

## III. Relevant Facts

### A. *Relevant Case History*

The motion for summary judgment pending before the Court is substantially the same motion the undersigned addressed earlier in its May 5, 2011 report and recommendation except that in this instance, the plaintiff has moved for summary judgment instead of the defendant. In the earlier motion, the undersigned recommended and the District Court adopted the recommendation that defendant be denied summary judgment on plaintiff's claim brought under 29 U.S.C. § 1132(c)(1) for failure to timely provide pension plan documents and enrollment forms. (*See* May 23, 2011 Order, Doc. 33). In this earlier report and recommendation, adopted *in toto* by the District Court, the undersigned also addressed the plaintiff's claim brought under Section 1132(a)(1)(B) contesting the *amount* of his pension benefits. There appears to be no contest that a pension plan in 1983 should govern the amount of the benefits to which plaintiff is entitled, however, those plan documents cannot be found. After this lawsuit was filed and additional attempts to find the plan documents from 1983 were unsuccessful, plaintiff conceded that a pension plan in effect in 1989 was the best evidence available to calculate his pension benefits. Plaintiff then conceded to the amount proposed by defendant based on the plan in effect in 1989. Since plaintiff withdrew his opposition to this portion of defendant's motion for summary judgment, defendant was granted summary judgment on this particular claim. Plaintiff's claim for failure to timely provide plan documents and enrollment forms remained, and it is this claim for which plaintiff seeks summary judgment.

*B. Relevant Facts*

Gregory became employed by Amana Refrigeration, Inc.'s Fayetteville, Tennessee plant on October 4, 1973. Amana Refrigeration, Inc. was a division of Raytheon Corporation. Gregory was an hourly bargaining unit employee. As such, he was a participant in the Amana Refrigeration, Inc. Fayetteville Bargaining Unit Pension Plan, (the Plan) which was a defined benefit retirement plan for hourly Fayetteville employees covered by the collective bargaining agreement with the International Association of Machinists and Aerospace Workers. Gregory continued his participation in this pension plan until he was promoted to a salaried management position on September 27, 1983. At that time, Gregory was no longer in the union or covered by the collective bargaining agreement so, under the terms of the Plan, his participation in the Plan ended. Thus, the Plan as it existed in 1983 (the 1983 Plan) should govern the amount of pension benefits due plaintiff.

In 1997, Goodman acquired Amana Refrigeration, Inc.'s Fayetteville, Tennessee plant from Raytheon Corporation. As part of the acquisition, Goodman assumed administrative responsibility over the Plan. Also, at that time, Gregory became an employee of Goodman. On July 28, 2003, Goodman terminated Gregory's employment.

It is not known if Goodman ever received a copy of the 1983 Plan. In 2005, Kristi Pittman became Goodman's Corporate Benefits Manager replacing the previous manager who had died. In response to an inquiry by Gregory about his benefits, Pittman wrote to Gregory on November 2, 2007 stating Goodman's "records show you are eligible for [an] annual pension benefit of $720.00." (Doc. 19-2 Page ID # 298). She noted that while Gregory contended he

4

was entitled to a benefit amount of $300 per month, "I've researched your benefit and there is nothing in your file to support this amount." The letter does not explain how Pittman arrived at the $720.00 per year amount. On November 6, 2007, Gregory wrote to Pittman stating that under the retirement plan at issue, he was entitled to "$20.50 a month for each years [sic] of credit service. I'm entitled to pension pay for the 11 years of service." (Doc. 19-2, Page ID #299). Gregory requested that Goodman, "[p]lease send all necessary paperwork that is required to get my benefits started." *Id.*

In a letter dated July 30, 2008, actuary Scott Homann wrote a letter to Kristi Pittman informing her that, as she had requested, he had calculated Gregory's benefits pursuant to the Plan as it existed in 1989 (the 1989 Plan). (Doc. 73-1, Page ID # 470.) Homann also informed Pittman that since Gregory's benefits exceed $5,000, he was not entitled to a lump sum payout. (Doc. 73-1, Page ID # 470.)

Sometime in the fall of 2008, Pittman sent Gregory's attorney, Mark Stewart, a summary plan description of the 2008 Plan. (Second Pittman Aff. Doc. 42-4, Page ID# 632-654). On October 8, 2008, Stewart wrote to Kristi Pittman stating that Mr. Gregory had placed over 200 calls to her office, and he had received no satisfactory response to his request for payment of his pension benefits. (Doc. 19-2, Page ID # 300). Stewart further noted that in his conversation with Pittman, she had indicated to him that Goodman's attorney was looking at the details of the Plan to determine the appropriate benefit payable to Gregory. Stewart gave Pittman 14 days to let him know Gregory's pension benefit or Gregory would institute legal action. *Id.*

5

Receiving no response to his October 8, 2008 letter, Stewart again wrote to Kristi Pittman on October 20, 2008 requesting a response to his October 8, 2008 letter. (Doc. 19-2, Page ID #301).

On February 5, 2009, Gregory's new attorney, Peter T. Skeie, wrote to Kristi Pittman, requesting copies of plan documents and "all material information retained in a digital or other format responsive to 29 U.S.C. § 1024(b)(4)." (Doc. 19-2, page ID #302). Skeie attached a release and authorization from Gregory to his February 5, 2009 request. (Doc. 19-2, page ID #302).

Having received no response from Pittman, Skeie wrote to Kristi Pittman again on March 24, 2009 referencing his prior letter and asking for the same documents. (Doc. 19-2, Page ID #303). When he still did not receive a response from Pittman, Skeie wrote to Ben Campbell, Goodman's Executive Vice President and General Counsel, on April 22, 2009 asking for assistance in obtaining the requested documents. Skeie attached a copy of his February 5, 2009 and March 24, 2009 letters to Pittman. (Doc. 19-2, Page ID #304). Receiving no response from Ben Campbell, Skeie wrote to David Swift, Goodman's President and Chief Executive Officer, on June 3, 2009 explaining that three letters for requested information had gone unanswered and asking for the Plan documents and all material information responsive to 29 U.S.C. § 1024(b)(4). (Doc. 19-2, Page ID #305). Skeie attached copies of his February 5, 2009 and March 24, 2009 written requests to Pittman, and a copy of his April 22, 2009 written request to Goodman's Executive Vice President and General Counsel, to his June 3, 2009 written request to Goodman's Chief Executive Officer (Doc. 19-2, Page ID #305). On June 12, 2009,

Kristi Pittman finally responded to Gregory's "recent inquiries" by stating that Gregory may be eligible for a lump sum payment "based on the provisions of the plan." (Doc. 19-1, Page ID # 306). She stated Goodman was "going through the process" of determining if Gregory "is eligible and the appropriate amount due." *Id.* She concluded, "[o]nce I learn the status of Mr. Gregory's payment, I will send you a follow up letter. If he is eligible for a lump sum payment, I will send you additional information as to the timing of the payment. *Id.*

On June 18, 2009, Skeie again wrote to Pittman on Gregory's behalf to reiterate Gregory's request for copies of Plan documents and the forms necessary for Gregory to elect his benefits. (Doc. 19-1, Page ID #307).

On April 14, 2010, after Gregory had repeatedly and unsuccessfully asked for the Plan documents upon which his pension benefits are based, he filed suit against Goodman seeking (a) payment of his vested benefits under the Plan pursuant to 29 U.S.C. 1132(a)(1)(C), and (b) statutory damages or penalties pursuant to 29 U.S.C. § 1132(c)(1)(A) and (B) for failure to provide the requested Plan documents.

On June 10, 2010, Pittman wrote Gregory and enclosed documents describing plaintiff's benefits and the enrollment forms necessary for Gregory to elect benefits pursuant to the 1989 Plan. (Doc. 19-1, Page ID #265 – 297). On July 19, 2010 Gregory executed the forms and documents required to elect benefits as calculated pursuant to the terms of the 1989 Plan. (Doc. 19-1, Page ID #293 – 297). Gregory is now receiving retirement benefits pursuant to the terms of the 1989 Plan. (Doc. 19, Page ID # 242).

7

After Gregory filed this lawsuit, Goodman sent subpoenas to Jerry Benson, Business Agent for the International Association of Machinists Union, and Daryl Weir, Chief Union Steward for Goodman, in an attempt to find the 1983 Plan, but it was not found. Ms. Pittman avers she diligently searched for the 1983 Plan and would have provided them if she could have found them. (Second Pittman Aff. Doc. 42-4, Page ID # 627). She further asserts no delays were intentional, and she told Gregory what his benefits were in 2007 based on the 1989 Plan and gave him the opportunity to provide any evidence to the contrary if he disagreed. *Id.*

Pittman avers that while she cannot remember whether she told Gregory in 2007 that she could not find the 1983 Plan, "I can attest, however, that it would have been my customary practice to advise an individual inquiring about benefits that if I did not have it, I would try my best to find out the requested information." (Second Pittman Aff. Doc. 42-4, Page ID # 626.) This statement does not indicate, however, and I so find, that Pittman did not communicate with Gregory about her efforts to locate the 1983 Plan or her conclusion that it could not be found until Gregory filed this lawsuit.

Finally, while Pittman told Gregory on November 2, 2007 what she thought would be his annual pension benefit amount based on "the information we have on file regarding your pension," (Doc. 19-2, Page ID # 298), she did not provide him with a copy of the 1989 Plan that she relied upon to reach this calculation, despite the many requests enumerated above, until this lawsuit was filed.

### IV. Analysis

8

ERISA § 502(c)(1)(B), 29 U.S.C. §1132(c)(1)(B), provides that:

> Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph .... each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

As required by the Debt Collection Improvement Act of 1996, the $100 a day limit has been increased to $110 for violations after July 29, 1997. *See* 62 Fed. Reg. 40696. In terms of what documents the Plan Administrator must provide upon request, ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) states:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

*A. Plaintiff's Claim for Penalties for Failure to Provide the Enrollment Forms*

It is well settled that enrollment forms are not covered under 29 U.S.C. § 1024(b)(4) and a plan participant may not invoke Section 1132(c) to collect penalties from an administrator who fails to supply or complete claim or enrollment forms. *Allinder v. Inter-City Products Corp.*, 152 F.3d 544, 550 (6th Cir. 1998), *Jordan v. Tyson Foods, Inc.*, 312 Fed. Appx. 726, 734 (6th Cir. 2008); *Welch v. Dolgencorp, LLC*, 2011 WL 1130743 *8 (M.D. Ala. Mar. 25, 2011). Thus plaintiff may recover only for defendants' failure to provide the applicable pension plan

documents, not the enrollment forms. Therefore, as to plaintiff's claim for penalties based on the failure to provide enrollment forms, the undersigned will RECOMMEND plaintiff's motion for summary judgment be DENIED.

*B. Plaintiff's Claim for Penalties for Failure to Provide the Plan Documents*

*1. Goodman Violated Section 1132(c)(1)(B).*

There is no dispute between the parties that Gregory was a participant in the pension plan at issue, that Goodman was the administrator of the plan, that Gregory made written requests for plan documents which are required to be produced, and that Goodman did not produce them, at least until June 10, 2010. Nevertheless, Goodman argues it did not violate Section 1132(c)(1) because its failure to provide those documents was not its fault. Under 29 U.S.C. § 1132(c)(1)(B), an administrator's failure to timely provide requested documents does not constitute a violation if "such failure or refusal results from matters reasonably beyond the control of the administrator…" Goodman argues it could not provide what it did not have. This *is* true; Goodman could not provide the 1983 Plan documents because it did not have the 1983 Plan documents. However, as early as 2007, Goodman had calculated Gregory's benefits, and the undersigned is assuming Goodman did not calculate those benefits from thin air. The calculation had to be based on *some* plan documents and Goodman did not provide those plan documents until June 10, 2010.

"The purpose of [Section 1132(c)(1)] is to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so." *Bartling v.*

10

*Fruehauf Corporation*, 29 F.3d 1062, 1068 (6th Cir. 1994); *see also Fadalla v. Life Automotive Products, Inc.*, 2009 WL 325369 *2 (6th Cir. Oct. 13, 2009) (unpublished) (The purpose of ERISA's penalty provision is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information") (quoting *Garst v. Wal-Mart Stores, Inc.*, 30 Fed. Appx. 585, 591 (6th Cir. Mar. 12, 2002) (unpublished)). A plan administrator owes a fiduciary duty to a plan participant or beneficiary "to provide *complete* and accurate information." *McGrath v. Lockheed Martin Corporation*, 48 Fed.Appx. 543, 557 (6th Cir. Oct. 9, 2002) (unpublished). "ERISA fiduciary duty provisions incorporate the common law of trusts, and the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *McGrath*, 48 Fed.Appx. at 555 (quoting *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999)). In *McGrath*, the Sixth Circuit affirmed the district court's decision to award penalties for an administrator's failure to timely provide documents for the plan under which plaintiff was covered even though the plaintiff had asked for documents from the wrong plan – a plan under which plaintiff was *not* covered. *Id.* The Sixth Circuit found imposition of a penalty was not inappropriate where "[the administrator] did not inform the plaintiff that he was asking for the incorrect documents, nor did she send plaintiff a copy of another pension plan." Because Goodman failed to provide Gregory with the Plan documents it used to calculate his benefits until June 10, 2010, I conclude Goodman did violate Section 1132(c)(1)(b).

*2. Penalties Are Appropriate.*

11

Under Section 1132(c)(1)(B), the Court has discretion in deciding whether to assess a penalty against an administrator up to $110 per day for failure to provide the requested information. *Bartling v. Fruehauf Corporation*, 29 F.3d 1062, 1068 (6th Cir. 1994). While many courts have refused to impose any penalty at all absent a showing of bad faith or prejudice to the plaintiff, a showing of bad faith or prejudice is not *required* to impose the penalty; rather they are factors for the court to consider when exercising its discretion. *See Bartling*, 29 F.3d at 1068-69; *Knickerbocker v. Ovako-Ajax, Inc.*, 1999 WL 551409 *4 (6th Cir. July 20, 1999) (unpublished) ("Although § 1132(c)(1)(B) does not require prejudice to impose penalties, a district court may consider prejudice in exercising its discretion"); *Hamilton v. Publicis Groupe Short Term Disability Plan*, 2006 WL 2771742, *14 n. 11 (E.D. Mich. Sept. 25, 2006) (unpublished) ("Even if detrimental reliance and prejudice are not necessarily prerequisites to imposing the penalty; detrimental reliance and prejudice remain factors in deciding the amount (if any) of civil penalties to assess under 29 U.S.C. § 1132(c).")

There are no disputed material facts in this case. The record is uncontested as to what Goodman actually did or did not do in regard to plaintiff's requests for pension plan documents. What are disputed are the conclusions that should be drawn from the conduct. The undersigned will not repeat the facts in this case which are already fully set forth in this report. It is sufficient to observe that the record is replete with instances in which Gregory or his attorney, in writing, asked Goodman over a two and a half year period for Plan documents. Many of these requests were simply ignored. In other instances, Goodman's responses simply weren't

12

Case 4:10-cv-00023-HSM-WBC   Document 46   Filed 01/13/12   Page 12 of 16   PageID #: 688

responsive to the requests.   For example, in one response, Pittman wrote Gregory's attorney promising to look into Gregory's ability to obtain a lump sum settlement (Goodman's actuary had already said he was not entitled to a lump sum settlement nearly a year earlier), but Pittman still did not send any plan documents and did not follow up afterwards as she promised. Goodman simply delayed and strung Gregory along until Gregory was finally forced to file this lawsuit.   After Gregory filed this lawsuit, Goodman finally provided him with the plan documents it had relied upon to calculate his benefits.

Goodman also argues that Gregory has suffered no prejudice because he ultimately received the same amount of benefits to which Kristi Pittman told him he was entitled in 2007. Goodman's failure to inform the plaintiff that it could not find the 1983 Plan and its refusal to provide pension plan documents of any kind to the plaintiff until he was forced to file a lawsuit prejudiced the plaintiff by significantly delaying his receipt of benefits.   Further, Goodman's argument that plaintiff suffered no prejudice because he is receiving now the same amount of benefits Pittman originally told him he should receive implies that Gregory did not have the right to check the amounts himself – a premise which, of course, makes no sense given that ERISA requires the plan administrator to provide the plan documents to the participant when requested.

I conclude, considering the undisputed facts and all reasonable inferences drawn from them in the light most favorable to the defendant, (1) that Goodman intentionally and unreasonably delayed in telling Gregory that the 1983 Plan documents could not be found, and (2) that Goodman intentionally and unreasonably delayed in providing the plan documents it did

13

rely upon (the 1989 Plan) to calculate Gregory's benefits. A $110.00 per day penalty under Section 1132(c)(1)(B) is warranted.

*3. The Actionable Time Period is April 23, 2009 through June 9, 2010.*

The undersigned has previously concluded, and the District Court has adopted this conclusion, that a one year statute of limitations applies to a claim for penalties brought in Tennessee under 29 U.S.C. § 1132(c)(1). Plaintiff filed the instant action on April 14, 2010. Therefore, all actionable conduct must have occurred on or after April 14, 2009. On March 24, 2009, Gregory's attorney, Peter Skeie, wrote Kristi Pittman asking for the Plan documents. Pursuant to 29 U.S.C. § 1132(c)(1), Goodman had thirty days, until April 23, 2009, to provide the Plan documents. April 23, 2009 is within the one year period before April 14, 2010 when plaintiff filed this action. Thus, Gregory's cause of action accrued on April 23, 2009. Goodman sent plaintiff his benefits enrollment package with the applicable pension plan documents on June 10, 2010. Therefore, penalties may be assessed from April 23, 2009 to June 9, 2010, the day before Goodman provided the requested pension plan documents.

*4. The Penalty Amount is $45,430.00.*

Plaintiff asserts that each request for Plan documents and defendant's failure to provide them within 30 days constitutes a separate violation for which plaintiff may recover $110.00 per day. Plaintiff seeks the following penalties:

14

| Request Date | Delay | Subject to Penalty | Maximum Penalty for Failing to Produce Plan Documents |
|---|---|---|---|
| March 24, 2009 | 443 days | 413 | $45,430 |
| April 22, 2009 | 414 days | 384 | $42,240 |
| June 3, 2009 | 372 days | 342 | $37,620 |
| June 18, 2009 | 357 days | 327 | $35,970 |
| Total | | | $161,260 |

(Plaintiff's Memorandum at 8, Doc. 36, Page ID # 432).

Defendant, of course, opposes plaintiff's position that each new, unanswered request for the same documents constitutes a new violation which can be "stacked," one upon the other, for purposes of assessing the $110.00 a day penalty. Plaintiff cites not a single case in which a court "stacked" penalties in the manner suggested by him. Rather, plaintiff relies on language in 29 U.S.C. § 1132(c)(1)(B) which states in relevant part, "each violation …with respect to any single participant or beneficiary, shall be treated as a separate violation." This language does not, however, state that each *request* for the *same* document by the *same* participant shall be treated as a separate violation, and, without any precedent to do so, the undersigned declines this invitation.

There are four hundred and thirteen days from April 23, 2009, when plaintiff's cause of action accrued, to June 9, 2010, the day before Goodman provided the 1989 Plan documents to plaintiff. Four hundred and thirteen days multiplied by $110.00 is $45,430.00. Finally, even if a court could "stack" penalties as plaintiff argues should be done in this case, I conclude, given all the circumstances in this case, that $45,430.00 is a sufficient amount to penalize the

15

defendant and award to the plaintiff under Section 1132(c)(1)(B) for failure to timely provide the Plan documents.

## V. Conclusion

For the reasons stated herein, it is RECOMMENDED[1] plaintiff's motion for summary judgment be GRANTED in part and DENIED in part. Specifically, it is RECOMMENDED plaintiff's claim for monetary damages brought under 29 U.S.C. § 1132(c)(1)(B) for failure to timely provide Plan documents be GRANTED and plaintiff be awarded $45,430.00 from defendant. It is further RECOMMENDED plaintiff's motion for summary judgment as to plaintiff's claim for monetary damages brought under 29 U.S.C. § 1132(c)(1)(B) for failure to timely provide enrollment forms be DENIED.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).